SH

WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Emmanuel L. Castillo,<br>　　　　　Plaintiff,<br>v.<br>Gerald Thompson, et al.,<br>　　　　　Defendants. | No. CV 21-00527-PHX-JAT (ESW)<br><br>**ORDER** |

Plaintiff Emmanuel L. Castillo, who is currently confined in Arizona State Prison Complex (ASPC)-Eyman, Browning Unit in Florence, Arizona, brought this pro se civil rights case pursuant to 42 U.S.C. § 1983. (Doc. 14.) Defendants move for summary judgment, and Plaintiff opposes the motion.[1] (Docs. 86, 90.)

**I.　Background**

In his First Amended Complaint, Plaintiff sues ASPC-Lewis, Morey Unit employees Warden Gerald Thompson, Deputy Warden Travis Scott, Associate Deputy Warden Randy Kaufman, Major Daniel Walker, and Chief of Security Luis Matos for their alleged failure to fix deficient cell door locks in the unit, which led to Plaintiff being assaulted by other prisoners. (Docs. 14, 18.) Plaintiff claims Arizona Department of Corrections (ADC) policy requires the regular inspection of security devices to ensure they are in good working condition and requires supervisory and other management personnel

---

[1] The Court provided notice to Plaintiff pursuant to *Rand v. Rowland*, 154 F.3d 952, 962 (9th Cir. 1998) (en banc), regarding the requirements of a response. (Doc. 88.)

to conduct regular inspections and tours and that Defendants knew of the potential danger from deficient cell door locks but failed to fix the locks. (Doc. 14 at 7–11.) Plaintiff alleges that on April 26, 2019, while he was housed on the Morey Unit, he was assaulted by other prisoners, and he subsequently secured himself in his cell behind a locked door, but another group of prisoners manipulated the cell door lock, opened it, and began to further assault him. (*Id.*) Plaintiff asserts he was chased, dove off the second story tier to avoid being assaulted further and to "preserve [his] life," "slam[m]ed to the floor[,] hitting [his] head," and was hospitalized. (*Id.*)

On screening under 28 U.S.C. § 1915A(a), the Court determined that Plaintiff stated Eighth Amendment deliberate indifference claims against these Defendants and directed them to answer. (Docs. 15, 19.) Defendants now move for summary judgment and argue that Plaintiff failed to exhaust the available administrative remedy. (Doc. 86.)

**II.     Summary Judgment Standard**

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its

favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

**III.   Exhaustion**

**A.   Legal Standard**

Under the Prison Litigation Reform Act, a prisoner must exhaust "available" administrative remedies before filing an action in federal court. *See* 42 U.S.C. § 1997e(a); *Vaden v. Summerhill*, 449 F.3d 1047, 1050 (9th Cir. 2006); *Brown v. Valoff*, 422 F.3d 926, 934-35 (9th Cir. 2005). The prisoner must complete the administrative review process in accordance with the applicable rules. *See Woodford v. Ngo*, 548 U.S. 81, 92 (2006). Exhaustion is required for all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 523 (2002), regardless of the type of relief offered through the administrative process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The defendant bears the initial burden to show that there was an available administrative remedy and that the prisoner did not exhaust it. *Albino v. Baca*, 747 F.3d 1162, 1169, 1172 (9th Cir. 2014); *see Brown*, 422 F.3d at 936-37 (a defendant must demonstrate that applicable relief remained available in the grievance process). Once that showing is made, the burden shifts to the prisoner, who must either demonstrate that he, in fact, exhausted administrative remedies or "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. The ultimate burden, however, rests with the defendant. *Id.* Summary judgment is appropriate

if the undisputed evidence, viewed in the light most favorable to the prisoner, shows a failure to exhaust. *Id.* at 1166, 1168; *see* Fed. R. Civ. P. 56(a).

If summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge; a plaintiff is not entitled to a jury trial on the issue of exhaustion. *Albino*, 747 F.3d at 1170-71. But if a court finds that the prisoner exhausted administrative remedies, that administrative remedies were not available, or that the failure to exhaust administrative remedies should be excused, the case proceeds to the merits. *Id.* at 1171.

### B.     ADC Grievance Procedure

ADC Department Order (DO) 802 governs the ADC's prisoner grievance procedure and sets forth the procedures that prisoners must follow to complete the prison administrative grievance process with respect to issues related to any aspect of institutional life or condition of confinement. (Doc. 87 (Defs.' Statement of Facts) ¶¶ 7, 8.) A written copy of the grievance policy is available to prisoners at each prison unit's inmate resource library, and prisoners also receive a written and oral explanation of the grievance procedure during intake and as part of the orientation process when they transfer to a new facility. (*Id.* ¶ 9.)

The grievance procedure for non-medical grievances is a four-step process. (*Id.* ¶ 11.) The first step of the grievance procedure requires prisoners to attempt to resolve their complaints through informal means by discussing the issue with staff in the area most responsible for the complaint. (*Id.* ¶ 12.)

If a prisoner is unable to resolve his complaint through informal means, the second step of the grievance procedure is for the prisoner to submit an Informal Complaint on an Informal Complaint Resolution Form, Form 802-11, to the Correctional Officer ("CO") III within ten workdays of the complained about incident. (*Id.* ¶ 13.) The CO III will informally investigate and attempt to resolve the issue raised in the Informal Complaint, attempt to resolve it, and will provide the prisoner with a written response within 15 workdays. (*Id.* ¶ 14.)

If the prisoner is dissatisfied with the Informal Complaint response, the prisoner may file a Formal Grievance using the Inmate Grievance Form 802-1 and/or the Inmate Grievance – GF Supplement, Form 802-7.  (*Id.* ¶ 15.)  The prisoner must file the Formal Grievance to the grievance coordinator within five days of receipt of a response from the CO III, and the grievance coordinator will log the Formal Grievance and investigate the issue. (*Id.*)  Within 15 working days of receiving the Formal Grievance, the deputy warden will issue a written response to the prisoner that includes the deputy warden's decision and supporting rationale.  (*Id.* ¶ 16.)

Finally, if the prisoner is dissatisfied with the deputy warden's response, the prisoner may submit an Inmate Grievance Appeal form to the grievance coordinator within five workdays of receipt of the Deputy Warden's decision on the Formal Grievance.  (*Id.* ¶ 17.)  The grievance coordinator will log, process, and forward the Inmate Grievance Appeal documents to the central office appeals officer within five workdays of receiving the Inmate Grievance Appeal.  (*Id.* ¶ 18.)  Within 30 calendar days of receiving of the Inmate Grievance Appeal, the central office grievance appeals officer shall prepare a response and submit it to the director for approval and signature; the director may delegate signature authority for any and all Grievance Appeal responses.  (*Id.* ¶ 19.)  The director's decision is final and constitutes the final step of the grievance procedure.  (*Id.* ¶ 20.)

If a prisoner does not receive a response from the designated prison official within the allotted time at any point within the grievance process, the prisoner may proceed to the next step of the grievance process the day after the response was due.  (Doc. 87-2 at 18 (DO 802 § 1.10).)

**C.**   **Plaintiff's Relevant Grievance Record**

Plaintiff was housed at the ASPC-Lewis, Morey Unit from January 11, 2019 until April 29, 2019.  (*Id.* ¶ 2.)  Plaintiff was out of the Morey Unit and in the hospital from April 26, 2019 until April 28, 2019.  (*Id.* ¶ 3.)  He was then assigned to ASPC-Lewis, Bachman Unit from April 29, 2019 until November 26, 2019, and then to ASPC-Eyman, Max Intake from November 26, 2019 until December 30, 2019.  (*Id.* ¶¶ 4, 5.)  Plaintiff was

transferred to the ASPC-Eyman, Browning Unit on December 30, 2021, where he is currently housed. (*Id.* ¶ 6.)

On August 18, 2019, Plaintiff submitted an Informal Complaint while he was housed at Bachman Unit which stated:

> This is in regards to the safety on Morey Unit. I was ass[a]ulted and the second ass[a]ult I jumped off [the] top tier in order to preserve my life. I was hospitalized and would like for this units [sic] authority (higher ups) to take custody safety and level seriously. I was on a 4 yard closed custody level and the doors w[]ere hardly locked.

(Doc. 90 at 7.) Plaintiff requested as a resolution that the staff be informed that "there [are] no exceptions when it comes to "safety" and that "things need to change." (*Id.*; Doc. 87 ¶ 28.) On August 21, 2019, Plaintiff received an Informal Complaint Response which stated, "Morey Unit is currently being fixed to overcome the safty [sic] issues that it had. This concludes my assistance in this matter. Your issue is resolved." (Doc. 87 ¶¶ 29–30.)

On September 9, 2019, Plaintiff submitted an Inmate Grievance while at Bachman Unit in which he stated, "I know the doors are being worked on, but my concerns besides the doors is conduct. The manner in which to control, defuse, and recognize potential issues." (*Id.* ¶¶ 31–32.) Plaintiff proposed as a resolution that "management set a manditory [sic] requirement in which all staff are required to take a safety class, that is a written test as well as a physical time response test." (*Id.* ¶ 33.) Plaintiff noted that his Informal Complaint was "attached to the back of [the] Griev[a]nce." (Doc. 90 at 8.)

On September 16, 2019, Plaintiff received a second response to his Informal Complaint Resolution advising him to "[p]lease be advice [sic] that our staff participate [in] numerous training[s] in order to run the prison at the state stand[ard]. This matter has been resolved." (Doc. 87 ¶ 35.)

On September 22, 2019, prior to receiving a response to his Inmate Grievance—and before the deputy warden's deadline to respond had expired—Plaintiff submitted an Inmate Grievance Appeal discussing the need for new safety training classes and requesting that ADC implement "high impact learning." (*Id.* ¶ 37.)

- 6 -

On September 30, 2019, Plaintiff's Inmate Grievance and Inmate Grievance Appeal were returned as unprocessed. (*Id.* ¶ 39.) The Inmate Grievance was returned as unprocessed for failure to attach the corresponding Informal Complaint Resolution, and the Inmate Grievance Appeal was returned as unprocessed both for failure to attach the corresponding Informal Complaint Resolution, and for filing the Inmate Grievance Appeal out of timeframes. (*Id.* ¶¶ 40–41.) Plaintiff did not re-submit either the Inmate Grievance or the Inmate Grievance Appeal. (*Id.* ¶ 42.)

Plaintiff did not submit any other Inmate Grievances or Inmate Grievance Appeals related to the assault on April 26, 2019, whether processed or unprocessed, while housed at Bachman Unit. (*Id.* ¶ 45.) Plaintiff did not submit any Informal Complaints, Inmate Grievances, or Inmate Grievance Appeals related to the assault on April 26, 2019 after being transferred to Browning Unit. (*Id.* ¶ 48.)

### D.    Discussion

As an initial matter, to the extent Defendants argue that Plaintiff's August 18, 2019 Informal Complaint was untimely because it was filed three months after Plaintiff's assault (*see* Doc. 86 at 8–9), this argument is unavailing because Plaintiff's Informal Complaint was addressed on the merits despite its apparent procedural deficiency. *See Reyes v. Smith*, 810 F. 3d 654, 658 (9th Cir. 2016) (when prison officials process a procedurally deficient grievance on its merits, they cannot thereafter rely on said procedural rule as a basis for dismissal). Notwithstanding, the undisputed facts show Plaintiff submitted his Inmate Grievance Appeal prematurely before the prison's 15-workday deadline to respond to the Inmate Grievance had expired. Therefore, even if Plaintiff did attach a copy of his Informal Complaint to his Inmate Grievance, his failure to abide by DO 802's timeframe for submitting his Inmate Grievance Appeal means that he failed to comply with the procedural requirements of the grievance procedure. *See Woodford*, 548 U.S. at 90-91, 93 (to properly exhaust remedies, a prisoner must comply with the procedural rules set out in the prison's grievance policy). On these facts, Defendants have met their initial burden of showing that an administrative remedy was available to Plaintiff through the grievance procedure

1  outlined in DO 802 and that Plaintiff failed to fully exhaust this remedy with respect to his
2  claims against Defendants.  Accordingly, the burden shifts to Plaintiff to show that he
3  exhausted the available remedy or that the existing remedy was effectively unavailable to
4  him. *Albino*, 747 F3d at 1172.

5  In response, Plaintiff argues that the existing remedy was unavailable to him.
6  Plaintiff states that, on some unspecified date, "[h]e was taken to a back room and punched
7  and repeatedly kneed, [h]e was verbally threatened not to bring up the incident that
8  [o]ccur[r]ed at Morey Unit." (Doc. 90 at 2.)  Plaintiff also asserts that he endured "constant
9  harassment by ADC employees" and that he "was threatened and abused by Corrections
10 Officers shortly after he came back from the hospital." (*Id.* at 2, 3.)  Plaintiff argues that
11 he "was [i]ntimidated and abused by ADC [e]mployees, [and] according to the PLRA,
12 exhaustion isn't required when such incidents happen to prisoners." (Doc. 90-1 at 6–7.)

13 A prison official's threats can render the prison grievance system unavailable if the
14 prisoner actually believed the prison official would retaliate against him if he filed a
15 grievance and if that belief was objectively reasonable. *McBride v. Lopez*, 807 F.3d 982,
16 988 (9th Cir. 2015).  Here, Plaintiff's failure to exhaust is not excusable, and the evidence
17 does not show that the remedies were effectively unavailable to him.

18 Plaintiff's contention that he was threatened, intimidated, and abused shortly after
19 coming back from the hospital does not excuse his failure to properly exhaust the available
20 administrative remedies against Defendants.  Although a failure to exhaust may be
21 excusable based on a threat of retaliation, the prisoner must show that (1) the threat of
22 retaliation actually deterred the prisoner from lodging a grievance or pursuing a particular
23 part of the process, and (2) "the threat is one that would deter a reasonable inmate of
24 ordinary firmness and fortitude from lodging a grievance or pursuing part of the grievance
25 process that the inmate failed to exhaust." *McBride*, 807 F.3d at 987 (citation omitted).
26 Even if Plaintiff was threatened by unnamed corrections officers shortly after returning
27 from his April 26–28, 2019 hospital stay, Plaintiff's failure to provide the specific dates,
28 location(s), or personnel involved make it impossible for the Court to determine whether a

prisoner of ordinary firmness would not have pursued the grievance process against Defendants. *Id.* at 988 ("there must be some basis in the record for the district court to conclude that a reasonable prisoner of ordinary firmness would have believed that the prison officials' action communicated a threat not to use the prison's grievance procedure and that the threatened retaliation was of sufficient severity to deter a reasonable prisoner from filing a grievance"). Additionally, the unrefuted evidence shows that Plaintiff continued to file grievances after his transfer to Bachman Unit, and he initiated the grievance process with respect to his claims against Defendants during that time. Absent specific facts showing that Plaintiff was threatened or abused in August and September 2019 when he was pursuing a grievance with respect to his claims in this action, Plaintiff has not met his burden of showing that the existing remedy was unavailable to him at the relevant time.

On this record, the evidence shows that Plaintiff failed to exhaust his claim against Defendants, and Plaintiff fails to show that he did so or that the available remedies were effectively unavailable to him. Accordingly, the Court will grant Defendants' Motion for Summary Judgment, and Plaintiff's claims against Defendants will be dismissed without prejudice for failure to exhaust administrative remedies.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is withdrawn as to Defendants' Motion for Summary Judgment (Doc. 86).

(2) Defendants' Motion for Summary Judgment (Doc. 86) is **granted**, and the action is terminated without prejudice for failure to exhaust the available administrative remedy. The Clerk of Court must enter judgment accordingly.

Dated this 20th day of July, 2022.

James A. Teilborg
Senior United States District Judge